Good morning. This is Leroy Mack v. USAA Casualty Insurance Company. Roger Mandell is here for Appellant Mack and Roger Eccleberry is here for USAA. And Mr. Mandell, you may proceed with your argument. Thank you, Your Honor. Roger Mandell for Appellant Leroy Mack. Time allowing, I will make two major arguments today. Number one, Appellant Mack does not have Article III standing to continue pursuing this appeal requiring the court to vacate the order of dismissal and send this case back to the district court with instructions for it to remand the case back to state court. Number two, the district court erred in compelling appraisal in dismissing the complaint and time allowing that argument will also have two parts. First, that the policy by its own terms requires appraisal of disagreements over the amount of damage to a vehicle only and not of disagreement over the amount payable by USAA. And second, that even if the policy could apply to a disagreement over the amount payable under Florida law, it does not apply to disagreements where the amount of the payment hinges on policy coverage and interpretation because under Florida law, those questions can only be decided by lawyers and not by appraisers. And Mr. Mack's claim only presents those types of legal, not appraisable issues. Let's return to Article III standing. Under A&M Gerber, to have standing for declaratory judgment action, either the plaintiff has to allege a substantial likelihood of future harm or a claim for money damages. Mr. Mack has never claimed a substantial likelihood of future damages. He had declaratory standing when he filed this suit because he also had filed a breach of contract claim for USAA's failure to pay title license fees. Mr. Mack's title license fee claim became moot during the appeal. When it did, he not only lost the standing to pursue the breach of contract claim, he also lost the standing to get dependent upon the existence of the breach of contract claim. Mr. Mandel, why isn't this case more like Mills versus Foremost Insurance Company, our decision in that case, and also our decision that AA Suncoast Chiropractic, and that if he is successful on his declaratory judgment, wouldn't that get him more money on his total loss claim? Well, Your Honor, I think that the key thing is what this court said in A&M Gerber was, you have to have a claim for monetary damages. And I believe pretty clearly what that meant was a separate claim for monetary damages as opposed to a claim for declaratory relief, which at some indeterminate point in the future could lead to monetary relief. I think what this court wants to... He's asking for a recalculation of his total loss claim, and wouldn't that get him more money? Not necessarily, Your Honor. There's a variety of different legal methods under the Florida statute, and so they would pick one of those methods and they would make an offer. And that might or might not be more than the illegal method that they were using, the CCC system. So it doesn't inevitably lead to more money. We just don't know. But I think the important thing is that I think a bright line rule is much easier here. If we just say you have to have a separate claim for breach of contract or for money, then we know there is standing or there is not. If we get into whether or not a declaratory relief does or does not ask for indirectly for monetary relief or could somehow lead to monetary relief, then every declaratory relief claim that addresses past behavior becomes very amorphous. And instead of a bright line for standing, we have this very amorphous standard. And what it could allow is somebody to file a declaratory judgment based totally on past circumstances, add in a supplemental relief claim that says, and when I win this, I want money. And then they would automatically have Article 3 standing, and they can move for certification under Rule 23B3. And I don't think that under A&M Gerber, that was the intent of the court, that merely by whatever supplemental relief we request, that all claims for past declaratory relief are going to meet the standard of Article 3. I think the bright line standard should be there has to be a separate claim for damages or there is no standing or else the court's going to create a mess that district courts are going to be dealing with for years. Now, the consequences of the case becoming moot and the claim for monetary relief being dropped is that the standing relief also fails. And when a case becomes moot on appeal, this court has consistently dismissed the appeal, vacated the district court's judgment, and remanded the case back to the district court. And when the case originated in state court, this court, when it vacates and remands the district court, it remands it with instructions to remand the case back to state court. Let me ask you a question about that because I do think that, I mean, I think perhaps the positions would have been changed here if there wouldn't have been the option of a remand back to state court. And so the question I have is, you know, here, this standing issue has arisen fairly late in the case. I mean, well after it was removed. I mean, you can see there was standing at the removal. Would it really be appropriate at this point in the case to say that if there was a lack of standing for this particular claim that the there's any other choice? The reason that we vacate a judgment below when a case becomes moot on appeal is otherwise the case would become effectively non-reviewable. So we have to vacate that judgment because it's now non-reviewable. And it now has, after remand, it has no Article 3 standing. And this court has consistently said that when a case was removed from state court to district court and the district court is now, whether originally or on remand, has in front of it a case that doesn't have Article 3 standing. What it must do is remand the case back to state court because it doesn't have jurisdiction. So I don't think there's any other option but to remove it back to state court. Another question on standing. So you, in your complaint, not only do you assert claims on your own client's behalf, but also on behalf of the class. And you say that there is a potential for a declaratory judgment to give them relief in the future because they're still governed by these contracts, right? They're still under the insurance contracts. So why isn't the potential for declaratory relief that would help you in the circumstances, similar to auto accidents, why isn't that enough to give you standing? Well, Your Honor, in A.M. Gerber, the court addressed exactly that. And it said that the fact that you're still insured under the policy, which some of these people are and some are not after their total loss events, is not alone a substantial likelihood of future harm. That there has to be more evidence than merely that there is a theoretical possibility that someday an insured will again be in an accident or a total loss accident. So that is not enough to give them standing. And as to the past relief, for the reasons I said, I think we want to draw a clear line that if you don't have a substantial likelihood of future harm, that the only way they're standing is if there is a separate claim for damages. With the little bit of time I have left, if Your Honors are interested, I would address the appraisal issue on the merits. And I would start with the second argument first, which is that this court recently made it very clear that claims like Max present only legal issues that have to be decided by courts, regardless of the wording. Thank you. Regardless of the wording of the appraisal clause, in McGowan versus first acceptance decided by this court December 18 of last year, which involved title license fee claims, this court held my quote, whether the policies term actual cash value includes sales tax, title transfer fees and registration fees is a question of policy interpretation for the court. And this court, we're not bound by that decision that we counsel since it's an unpublished decision. No, you're not bound by your honor, but I would I think it should be persuasive. Certainly the reasoning, because in part the reasoning was based on the Florida Court of Appeals 2020 decision in Gravity Storm and that that Florida appellate decision should be in the absence of contrary Florida Supreme Supreme Court authority should be binding by the court with more versus travelers, which goes the other way, doesn't it? No, more versus travelers not go the other way. In that case, the parties agreed that if the coverage question that if the plaintiff needed a general contractor, then the profit and overhead of the general contractor would be covered. The disagreement was not over the legal coverage of profit and overhead. It was over whether that plaintiff needed in his particular case, a general contractor. That is a factual question suitable for appraisal. But the coverage question of whether profit and overhead can be required if it's part of the actual cash value of the replacement cost was a legal question. So more actually supports the position that we're So, you know, I that's a that's an interesting way to distinguish more. Are we not in that same situation, though, that you just posited? Because the insurance company is saying, look, you totaled your car. We got to pay you some money for the total car. Here's the money that we're going to pay you. And then your argument is that's not the right amount of money. I mean, isn't that basically what's going on here? And isn't that something that requires appraisal? Well, no, Your Honor, we have a declaratory judgment action. And the first we're asking for declaration is that the CCC system is illegal under Florida law and breaches the policy into which it was incorporated its use. Whether or not a electronic database meets the statutory criteria is a pure question of law. The second claim is whether or not actual cash value includes dealer fee. Well, the same exact reasoning that says that it's a question of law, whether title license fees are covered by actual cash value applies to whether dealer fees are covered by actual cash value. So the declaratory relief on those things is a question of law. The point is not whether the insurance claim is about money. That's what USAA keeps saying. It's about money. Well, every insurance case is about money. The distinction is whether the payment of the money hinges on a legal interpretation, which only courts can decide and not appraisers, or a factual question which is suitable for appraisers. And in this case, the amount of money payable, if this ever leads to more money, hinges on a policy interpretation and statutory interpretation, which is every court that's addressed it has said is not subject to Mr. Ekelberry. Thank you, Your Honors. Good morning, Your Honor. May it please the court. My name is Roger Ekelberry, and I represent USAA CIC and urging the court to affirm the dismissal entered by the Southern District of Florida. Your Honors, before I turn to my points, I'd like to address one issue with regard to the standing. Appellants Council states that they're not simply seeking declaratory relief. What's true that generally, to an extent, a plaintiff is the master of his own complaint, but that's not without limit. Just as courts ignore attempts to get around contractual arbitration provisions or contractual limitations provisions by trying to plead a claim as negligence, courts will look past Assad's and look at that. The substance of complaint is what's being alleged. On page four of the complaint, appellant clearly alleged that USAA CIC breached the contract by failing to pay dealer fee and by undervaluing the vehicle to the users. Now, they want to avoid the appraisal provision by alleging, but we're not seeking damages. We're not seeking damages. But counsel, how do you distinguish? And at the end of the day, we're bound by the most, since the Florida Supreme Court hasn't addressed this issue, the court that has addressed this issue is the Fourth District Court of Appeal. And the Fourth District Court of Appeal has said that there's a difference between actual loss and cash value, that there is a distinction, and that what, in essence, what you guys are fighting about is you have a And what they're saying is that the title fees and dealer fees are, they go to actual cash value as opposed to amount of loss, which is something that under the contract requires appraisal. And the Fourth District Court of Appeal has said that when you're dealing with actual cash value, like dealer fees, that that is a question of law to be determined by the trial and doesn't go to appraisal. So how do we distinguish that? A couple points, Your Honor. First, that does, well, tag and title fees are not an issue with the case, and appellants can see that. Dealer fees were paid, and that's in the record. Plaintiff attached to their complaint the valuation report, and it lists, I believe, nine comparable vehicles and their advertised price. The plaintiffs admit at page 11 of, or excuse me, page 4 of their brief, that the valuation was based upon the advertised price of those comparable vehicles minus deductions for mileage and options. So the dealer fees were included. So the question can only be, was the amount paid sufficient? That's a fact question. That's a value determination that is proper for appraisal. I would point out with respect to ACV that the Florida Supreme Court has addressed that. Now, appellants cite a footnote in their brief from J&H Auto Trim. That footnote, and they cite that for the proposition that ACV is a standard phrase included in insurance policies to describe the extent of coverage provided by the policy. Because it uses the word coverage, they say that means ACV determination, the question of law for the court. But just like the definitions in the policy, they take that quote out of context. The issue in J&H Auto was, the coverage question was how much, meaning dollar amount, not whether something was or was not covered. And they also ignore that in J&H Auto, the very next sentence discusses a Florida Supreme Court case. That case is New York Central Mutual Fire Insurance Company versus DX, 69 South 2nd 786. And this court in J&H Auto said in DX, the Florida Supreme Court explained that actual cash value is the actual value expressed in terms of money, of the thing for the purpose for which it was used. The court further cited DX as indicating that ACV and replacement costs are not synonymous. A replacement cost could be considered as one of the factors in determining actual cash value. So actual cash value is not a coverage question. It's a valuation question that is a proper phrase. And with all deference to the 1954, but it has not been overruled and it is still good law. Actual cash value in Florida, the evaluation. And that's consistent, Your Honor, with not just the terms of the policy, the common everyday use of it. Southern District of Alabama and Caribbean One Owners Association, Great American Insurance Company, 619 F 2nd 1178 said, in common ordinary parlance, amount of loss means the monetary value of property damage, irrespective of insurance coverage or sources of damage. Every issue that plaintiffs, excuse me, appellant goes back to loss, amount of loss and ACV. And they say in page 11 of their brief that they admit, say in the context of the appraisal clause, if the parties disagree over whether the physical damage to the covered auto is sufficient to make it a total loss, they disagree over the amount of loss and the disagreement is subject to appraisal. Amount of loss can only be value. It's not how many body panels on the vehicle were damaged in a disagreement over the number of engine components requiring repair. The entire provision is about dollars and cents. The very first section of Part D, the coverage that issue says, we will pay you for loss to your covered auto. It's all about value, not whether or not something is covered. And I would point out with respect to the claim that they're not seeking money damages. And with respect to the valuation, they say that may or may not result in payment later. With respect to the dealer fee at a minimum, they absolutely are seeking an order for money. It's not contingent on some later valuation. It is in this case, they asked for an order compelling USAA CIC to quote offer close quote dealer fees to appellant and they want later to a putative class. That is a euphemism. I can imagine if any one of your honors was a district court judge and ordered USAA CIC to make an offer and the plaintiff came back and said, well, they offered the money, but they're refusing to pay it. I would not want to be representing USAA CIC in that hearing. Under Florida law insurers are compelled to pay undisputed amounts. So an order of the court to offer dealer fees would be an order to pay those dealer fees. And just as with attempts to plead around contractual limitations, periods or arbitration provisions are ignored by the courts and they look at the substance of a complaint. That's what the district court did here. And that's what this court respectfully should do and look at the substance of the complaint, their allegation that reached the contract by not paying dealer fees. Let me ask you, let me ask you a question about the appraisal. So the other side in the case argues, I think with some force behind it, that there's really nothing for an appraiser to do because their argument is a pure argument of law. It really doesn't have anything to do with, you know, looking at a car and evaluating how much it would cost to replace a part. What do you say about that sort of practical argument? And I guess my question is really how do you envision an working in a case like this? Your Honor, the appraisal provision is not just the cost to repair, it's the cost to repair or replace. And that is what an insurance company is obligated to do. Although they frequently cite to actual cash value, that is a limitation of liability. And in insurance policies, you first have a grant of coverage and then you have separately limitations or exclusions. The grant of coverage requires USAACIC only to pay for loss. The actual cash value is the limit and the amount of loss is the amount it would cost to repair or replace. So the issue then for the appraisers is what is the cost to repair or replace? What is the value? And that is a factual question suitable for appraisal. And the cost to repair or replace, appellant argues, includes dealer fees. Fair enough. For purposes of the motion below, the court accepts that as true. The question though is, one, given that their own record establishes that they were included here, the question is, was what USAACIC paid sufficient to repair or replace, including those dealer fees? And although they allege that dealer fees were not paid, that is not required to be accepted as true because courts do not accept as true factual allegations that are contradicted by things like documents attached to the complaint or properly considered under Rule 10B. And so let me just see if I understand. Correct me if I'm is that this would go to appraisal. There would be an appraiser appointed by the plaintiff and appraiser appointed by the defendant. And then those appraisers would come to some number based on this question of, do you really have to pay these dealer fees or not to get a new car? And then that would be potentially subject to a third appraiser who would break the tie. And then that would be the end of the appraisal process. Is that, I mean, is that how it's supposed to work? Very close, Your Honor. The issue for the appraiser... Feel free to correct me if I'm wrong, please. A subtle distinction, Your Honor. The issue for the appraiser is, what would be the amount required to repair or replace? And the contract requires appraisers to set forth both of those numbers separately. They can overlap, but they don't always. So what would be the cost to repair or replace appellant's vehicle? So then we look at that number that the appraisers come up with, or if they can't agree, as Your Honor stated, the determination would be on fire breaking the tie. And if that number is higher than what appellant was already paid, if it's not, he has no injury and would have no injury. In fact, report a claim coming forward either on his own or on behalf of the plaintiff. Yeah. And so that's, you know, I think that's a really important point you just made because it's just, the plaintiff has crafted this case in such a way where he almost disclaims an injury in fact, right? I mean, he's saying it's not necessarily true that I would get more money. So why don't we just skip to that step and assume that, and assume he doesn't have an and then assume there's no standing and just get rid of the case. Because Your Honor, looking at the entire complaint, plaintiff does allege a breach of contract. He doesn't put a caption, count one breach of contract, but in the complaint, he alleges USAA CIC breached the contract. He asked for an order compelling us to pay money, euphemistically described as an order to offer money. And appellant did this, Your Honor, to avoid the appraisal provision and possibly to avoid difficulties on a B3 certification. Courts look past those, as the court did in AA Suncoast. But we're not here on class certification, Your Honor. We're here on the order compelling appraisal, which was proper, because there can be no doubt attempts to avoid appraisal and attempts to avoid B3 difficulty down the line aside, what plaintiff is asking court district court for was an award of money. And now they want to avoid that judgment and have it set aside by saying, well, we lack standing because we're not really asking for money. Justice is blind, but Your Honors aren't. The complaint alleged... Two minutes, counsel, two minutes. Thank you, ma'am. You're welcome. What if we did this? What if we issued an order that said this case is dismissed and should be remanded to the Florida state courts on the condition that no plaintiff in the case will ever be awarded any money? Would you be okay with that? No, Your Honor, because I don't know if that would be binding on a state court. It's an interesting jurisdictional question I hadn't thought of. I would disagree with the appellant's counsel that if the court does find that lacks article three standing, that the entire judgment of the district court should be vacated. In the cases appellant cites where that was true, the entire issues were mooted or the entire case was mooted. Here, appellant admits that because of a settlement, the tag title fee issue is now moot. It was not at the time of the judgment of the district court. The cases they cite where the entire underlying judgment is vacated, the issue resulting in mootness affected all the claims. Here, the issue of fighting affecting mootness was just the tag and title. And again, appellant does have standing because putting aside questions of potential payments on valuation methodology later, it claimed or excuse me, appellant unquestionably seeks money judgment on the dealer fees. Okay. Let me ask you just one last question about my attempted mediation of this dispute. Do Florida state courts, do they accept stipulations of under $75,000 when someone's trying to get out of diversity removal? So, you know, this happens when someone is a plaintiff says, look, my case is not worth $75,000 and I will stipulate to that. And that way it's not removed. The district court remands based on that stipulation. Do Florida state courts honor those stipulations or do they just ignore them? Your honor, my time is up. May I answer Judge Brashear's question? You may. Your honor, in an individual case, Florida courts may accept such a stipulation in an alleged class action. It would not be up to the Florida court because the United States Supreme Court has held that putative class representative pre certification cannot bind absent class members to that. Okay. That's a good point. Thank you, Your Honor. All right. Thank you, Mr Echo. Barry and Mr Mandela. You preserve some time for rebuttal. Thank you, Your Honor. At the very end, Mr Echo Berry touched on Article three standing and suggested that because there was standing at the time the order of dismissal was entered, that it should stand. And that can't be the case. And this court has never done that. This court no longer has no Article three standing. It's become moot. Both claims have become moot because there's no longer a claim for damages. If the order of dismissal were allowed to stand, it would effectively being non reviewable, which is not tolerable, which is why when a case becomes moot on appeal, it has to be the judgment has to be vacated. And if it was removed from state court sent back to state court because we can't have a non remove a non reviewable order. Um, now let's go to, um, appraisal. And I'll remind the court that we do have a threshold argument that this particular appraisal clause only applies to disagreements over the amount of damage and not disagreements over the amount payable. But we'll reserve that for the briefs and adjust and address the other issue. The mantra throughout Mr Echo Berry's thing was this case is about money. This case is about money and using declaratory relief doesn't change the fact that it's about money. This misses the point entirely. And this was what we were discussing at the end of my before at the end of my presentation, Judge Brasher, an amount of money. The amount of money payable can hinge upon either factual issues suitable for appraisal or legal issues which of coverage which have to be decided by a court. And in this case, whether the methodology used by them is illegal is, um, is a question of law. It requires applying a statute, a Florida statute to the facts of the CCC system. That is not something an appraiser can do. The other question is what what is covered by actual cash value? This case in Mills held that whether contractor profit and overhead was covered by actual cash value was a question of law and decided it in that way. Um, multiple courts have held that whether title license fee claims are covered by, um, uh, actual cash value is a question of law subject to court and denied appraisal and dealer fees are simply, um, no different. And that's the key. I think Judge Brasher, you had a good point. Well, what would what would go to appraisal? So if it were about dealer fees, if the legal the legal question is whether or not they're covered at all and the appraiser could not would be operating in a blind spot because he wouldn't know without a legal ruling by the court. If I were the person in the appraisal, I would go in and say I'm going to buy my new car from Kia, Honda, you know, bed for Kia and they charge an $899 dealer fee. Well, what would the appraisers do? They would have to award it. So we get the dealer fees, but we've been out all the hundreds of dollars the appraisers would cost. That's just a silly process. And in terms of whether the methodology is legal or not, what he's saying is just let them decide on the forever. And that is certainly that legal question escapes review forever. And I don't think that the appraisal clause is designed to allow the use of an illegal method to continue indefinitely because we can decide the value of the car through some other method. And that's essentially what they're what they're arguing here. So this is about legal issues. And because it's about legal issues, it's not subject to appraisal. I thank you, Mr. Mandela. Mr. Eichelberry, that concludes our argument in this case. Thank you. Thank you. Thank you.